### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE


Wilcox Industries Corp.

    v.                                                Civil No. 11-cv-551-PB

Mark Hansen and Advanced Life
Support Technologies, Inc.


### O R D E R


    Wilcox Industries Corp. ("Wilcox") has sued defendants in
eight counts, seeking injunctive relief and damages for, among
other things, their alleged misappropriation of Wilcox's
confidential and trade-secret information.  Before the court is
Wilcox's motion for limited expedited discovery.  Defendants
object.  For the reasons that follow, Wilcox's motion is denied.


### Background

    The following factual background is drawn from Wilcox's
complaint.  Wilcox manufactures military equipment.  Its
products include a self-contained breathing apparatus, initially
called the SCOUT, now called the PATRIOT.

    From 2003 until March of 2005, Mark Hansen served as a
consultant to Wilcox.  From March of 2005 through June of 2007,
he was employed by Wilcox as a vice president.  Shortly after he
left that position, Hansen and his new company, Advanced Life

Support Technologies, Inc. ("ALST"), performed consulting work for Wilcox.  Hansen stopped consulting for Wilcox in February of 2009.

During his time as both a consultant and an employee, Hansen had access to a wide range of Wilcox's trade secrets and confidential/proprietary information pertaining to product design, manufacture, marketing, and sales.  He also played a significant role in the development of Wilcox's SCOUT/PATRIOT products.  Hansen's legal relationship with Wilcox includes a royalty agreement, a nondisclosure and noncompetition agreement, and an assignment of his intellectual property rights in the SCOUT/PATRIOT to Wilcox.

Hansen's new company, ALST, is a direct competitor to Wilcox.  ALST manufactures and markets a self-contained breathing apparatus, the SHIELD.  According to Wilcox, the SHIELD incorporates some of its proprietary technology as well as technology for which it continues to pay Hansen a monthly royalty.  Wilcox also alleges that Hansen and ALST are currently using its proprietary customer information to market the SHIELD and that they have offered to service SCOUT/PATRIOT products, which, in turn would require Hansen to impermissibly use Wilcox's proprietary and confidential information.

Based on the foregoing, Wilcox sued Hansen and ALST, seeking injunctive relief and asserting claims for: (1) breach

of contract, breach of the implied covenant of good faith and fair dealing, common-law unfair competition, violation of the New Hampshire Consumer Protection Act, violation of New Hampshire's version of the Uniform Trade Secrets Act, breach of fiduciary duty, unjust enrichment, and intentional interference with contractual relations.  The planning conference required by Rule 26(f) of the Federal Rules of Civil Procedure has yet to take place.  ALST has filed a motion to dismiss under Rule 12(b)(2), and both defendants have filed a motion to dismiss under Rule 12(b)(6).  Neither motion is yet ripe for decision.

## Discussion

On the same day it filed its complaint, Wilcox moved for limited expedited discovery, arguing that it needs certain information in order to develop the factual record in preparation for moving for preliminary injunctive relief. Specifically, it seeks the following:

> a. A reasonable inspection of a physical sample of Defendants' Self-Contained Hybrid Integrated Evolution Life Support Device (SHIELD);
>
> b. A reasonable inspection of any prototype SHIELD products or component parts and accessories of the SHIELD;
>
> c. Production of any schematics, user or operating manuals showing the physical configuration and operation of the SHIELD product;
>
> d. Production of any documents, including purchase orders and supply contracts, listing the

names and contact information of any customers of
Hansen or ALST;

     e. Production of a list of the names and contact
information of any customers Hansen acquired while
engaged as an employee of or consultant to Wilcox; and

     f. Production of any documents or information
relating to Hansen and ALST's current and prospective
purchase orders for the SHIELD, or any
maintenance/service contracts that Defendants have
procured relating to Wilcox's products.[1]

Pl.'s Mot. for Disc. (doc. no. 3), at 2.  Defendants object,

characterizing Wilcox's motion as a fishing expedition and

arguing that the motion: (1) lacks adequate factual support; (2)

does not establish good cause; (3) does not adequately identify

the proprietary technology and proprietary customer information

they are alleged to have misappropriated; and (4) does not

adequately explain Wilcox's need for the wide range of

information it seeks.

A. Relevant Law

It is undisputed that at this early stage in the

litigation, Wilcox is not entitled to discovery without a court

order.  See Fed. R. Civ. P. 26(d)(1).  Before the court may

issue such an order, Wilcox must show good cause.  See Momenta

Pharms., Inc. v. Teva Pharms. Indus. Ltd., 765 F. Supp. 2d 87,

---

[1] Hereinafter, items a-c will be referred to as "technology
discovery" and items d-f will be referred to as "marketing
discovery."

88 (D. Mass. 2011); McMann v. Doe, 460 F. Supp. 2d 259, 265 (D. Mass. 2006) (citing Best W. Int'l, Inc. v. Doe, No. CV-06-1537-PHX-DGC, 2006 WL 2091695, at *3 (D. Ariz. July 25, 2006)). Courts have adopted two different standards for determining whether to allow expedited discovery. See Momenta, 765 F. Supp. 2d at 88; see also 6 James Wm. Moore, Moore's Federal Practice § 26.121[2], at 26-573 (3d ed. 2010). Here, the parties agree that the court should apply the so-called reasonableness standard that was articulated and used in Momenta and McMann, under which courts "analyze[ ] the 'reasonableness of the request in light of all of the surrounding circumstances.'" Momenta, 765 F. Supp. 2d at 89 (quoting Entm't Tech. Corp. v. Walt Disney Imagineering, No. Civ.A. 03-3546, 2003 WL 22519440, at *3 (E.D. Pa. Oct. 2, 2003); citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor, 194 F.R.D. 618, 624 (N.D. Ill. 2000)). When applying that standard, courts have considered various factors, such as

> the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm, the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity.

Momenta, 765 F. Supp. 2d at 89 (quoting McMann, 460 F. Supp. 2d at 265).

In Momenta, a patent-infringement case, the plaintiffs sought expedited discovery of "three discrete sets of documents

that [would] assist them in determining whether to move for a preliminary injunction." 765 F. Supp. 2d at 88. Judge Gorton denied the plaintiffs' request on grounds that: (1) notwithstanding their fear of imminent infringement, the plaintiffs could not demonstrate irreparable harm because, on the facts of that case, any infringement by the defendant was readily compensable by money damages, see id.; and (2) the plaintiffs had not yet filed a motion for preliminary injunctive relief, see id. Regarding the status of the plaintiffs' request for injunctive relief, Judge Gorton followed the majority position, under which "the fact that there [is] no pending preliminary injunction motion weigh[s] against allowing [a] plaintiff's motion for expedited discovery." Id. (citing El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc., 344 F. Supp. 2d 986, 991 (S.D. Tex. 2004); Entm't Tech., 2003 WL 22519440, at *3).

In McMann, a plaintiff suing for invasion of privacy, defamation, and common-law copyright infringement moved for expedited discovery, in the form of a subpoena, to learn the identity of the anonymous owner the website that published the material he found objectionable. See 460 F. Supp. 2d at 261-62, 265. Judge Tauro granted the motion, explaining that the discovery the plaintiff sought was essential, see id. at 265, because "[w]ithout the ability to issue a subpoena, John Doe's

true name would remain unknown, this suit could not proceed, and Plaintiff McMann could receive no remedy," id.

## B. Analysis

Wilcox argues that four of the five Momenta factors support its request for expedited discovery.  The court does not agree.

### 1. Purpose

Wilcox asks for expedited discovery of "certain facts it needs to develop in anticipation of filing a motion for preliminary injunction."  Pl.'s Mem. of Law (doc. no. 3-1), at 5.  According to Wilcox, it needs the technology discovery "to confirm that [ALST's] SHIELD incorporates Wilcox's confidential and proprietary technical information" and to "determine fully whether [ALST's] manufacturing and sale [of the SHIELD] misappropriates Wilcox's proprietary and trade secret technology."  Id. at 5, 6.  It says it needs the marketing discovery "to determine which Wilcox customers Defendants are targeting and what new business Defendants have taken from Wilcox."  Id. at 6.

Legally, Wilcox notes that "[e]xpedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings."  Ellsworth Assocs., Inc. v. United States, 917 F. Supp. 841, 844 (D.D.C. 1996) (citing Optic-Elec. Corp. v. United

7

States, 683 F. Supp. 269, 271 (D.D.C. 1987); Onan Corp. v.
United States, 476 F. Supp. 428, 434 (D. Minn. 1979)).
Defendants, in turn, point out that "expedited discovery is not
automatically granted merely because a party seeks a preliminary
injunction." Am. LegalNet, Inc. v. Davis, 673 F. Supp. 2d 1063,
1066 (C.D. Cal. 2009) (citing Disability Rights Council of
Greater Wash. v. Wash. Metro. Area Transit Auth., 234 F.R.D. 4,
7 (D.D.C. 2006); Dimension Data N. Am. v. NetStar-1, Inc., 226
F.R.D. 528, 532 (E.D.N.C. 2005)).

　　　As Judge Gorton observed in Momenta, among the courts that
have addressed this issue, the majority position is that the
absence of a pending motion for preliminary injunctive relief
weighs against allowing expedited discovery. See 765 F. Supp.
2d at 89 (citations omitted). Here, there is no pending motion
for preliminary injunctive relief. That weighs against Wilcox's
request. The court further notes that while Wilcox does say why
it seeks the technology and marketing discovery identified in
its motion, the reasons it gives do not seem to relate all that
strongly to its anticipated motion for preliminary injunctive
relief. To the court's eye, the technology discovery seems more
relevant to determining whether Wilcox actually has a claim at
all which, arguably, it should have determined before filing
suit. The marketing discovery, in turn, seems more like an
effort to collect information Wilcox could use to take steps

outside the litigation context to protect its customer base and less like an effort to collect information necessary for securing injunctive relief from defendants.  If Wilcox is entitled to an order barring defendants from marketing the SHIELD to any customers, it is not clear why Wilcox needs to know which particular customers defendants are targeting.

Wilcox points to this court's decision in Wheeler v. HXI, LLC, Civ. No. 10-cv-145-JD, 2010 WL 3023518 (D.N.H. July 28, 2010), as support for its request, but that decision is unavailing.  In that trade-secret misappropriation case, the court did partially grant the plaintiffs' motion for expedited discovery.  See id. at *1.  However, the plaintiffs in that case were not seeking to collect information in anticipation of filing their own motion for a preliminary injunction.  Rather, in addition to being plaintiffs, they were counterclaim defendants, and sought "expedited discovery 'to adequately prepare their opposition' to Defendant's preliminary injunction motion," which had already been set for hearing.  Id.  Here, no preliminary injunction motion has been filed, and if one ultimately is filed, Wilcox will be filing it, not defending against it.  In short, Wheeler is distinguishable from this case on multiple grounds.

Wilcox also places considerable emphasis on the nature of its claims, and the willingness of courts to allow expedited

discovery in cases involving claims of infringement,
misappropriation, and unfair competition.  While Wilcox states
that general proposition, the opinions on which it relies
involve only requests for discovery akin to the technology
discovery it seeks; neither of those opinions involves a request
for discovery akin to the marketing discovery Wilcox also seeks.
In addition, the two cases on which Wilcox relies are materially
distinguishable.

        In Semitool, Inc. v. Tokyo Electron America, Inc., the
plaintiff sued for patent infringement and then moved for
expedited discovery of information about the accused device that
would allow it to determine whether that device infringed
patents other than the one identified in the complaint.  See 208
F.R.D. 273, 276 (N.D. Cal. 2002).  The defendants in Semitool
conceded that the plaintiff would receive all the information
listed in its motion during the normal course of discovery.  See
id.  Judge Chen allowed expedited discovery, reasoning that the
information the plaintiff sought would "expedit[e] possible
amendment to its complaint, facilitate[] a more complete and
informed Case Management Conference and permit it to comply with
its disclosure obligations under North District of California
Patent Local Rule 3."  Id.  Here, defendants have not indicated
their position regarding whether Wilcox is entitled to all the
information it is now seeking during the normal course of

                            10

discovery.  More importantly, Wilcox identifies no benefits to
the administration of justice similar to those identified by
Judge Chen in Semitool.  Thus, nothing in Semitool advances
Wilcox's argument in this case.

In Pod-Ners, LLC v. N. Feed & Bean of Lucerne LLC, the
plaintiff claimed that the defendants infringed its rights in a
certain variety of field beans.  204 F.R.D. 675, 675-76 (D.
Colo. 2002).  After noting that "[g]ood cause [for expedited
discovery] frequently exists in cases involving claims of
infringement and unfair competition," id. at 676 (citing Revlon
Consumer Prods. Corp. v. Jennifer Leather Broadway, Inc., 858 F.
Supp. 1268, 1269 (S.D.N.Y. 1994), Magistrate Judge Boland
allowed the plaintiff expedited access to, among other things,
beans and bean plants in the defendants' possession, on grounds
that "[t]he beans at issue are commodities and subject to sale,
resale, and consumption or use with the passage of time," Pod-
Ners, 204 F.R.D. at 676.  Here, it seems safe to conclude that
the self-contained breathing apparatus that plaintiff seeks to
inspect will not evade normal discovery by escaping into the
food chain.  Thus, like Semitool, Pod-Ners offers no support for
Wilcox's request.

This case involves a potential rather than an actual motion
for preliminary injunctive relief.  It does involve allegations
of trade-secret misappropriation, but not the special

circumstances present in <u>Semitool</u> and <u>Pod-Ners</u>.  Thus, neither the procedural posture nor the subject matter of this case provides adequate support for Wilcox's request for expedited discovery.

### 2. Irreparable Harm

The second Momenta factor is "the ability of the discovery to preclude demonstrated irreparable harm."  765 F. Supp. 2d at 89 (emphasis added).  According to Wilcox, defendants are currently subjecting it to irreparable harm by: (1) selling a product that incorporates its proprietary technology; (2) engaging in unfair competition; and (3) interfering with its relationships with customers.  Those actions, in Wilcox's view, are jeopardizing its established market share in a highly specialized industry and damaging its "reputation and customer goodwill within a very small industry," Pl.'s Mem. of Law (doc. no. 3-1), at 7.  Wilcox argues that "[e]xpedited discovery will prevent further irreparable harm . . . because it will assist in developing the factual record for a preliminary injunction motion that, if granted, will terminate the conduct causing such harm."  <u>Id.</u>  Defendants contend that Wilcox has failed to provide adequate factual support for its argument.

As a preliminary matter, the irreparable harm Wilcox identifies is a far cry from the harm identified in <u>McMann</u> and

Pod-Ners.  In McMann, if the plaintiff had not been allowed the
expedited discovery he sought, he would have been precluded from
continuing with his suit.  See 460 F. Supp. 2d at 265.  In Pod-
Ners, without expedited discovery, the plaintiff faced the very
real possibility that essential evidence would have been sent
off to market in the form of consumable food products.  See 204
F.R.D. at 676.  In both of those cases, discovery was allowed to
protect the plaintiffs' ability to prosecute their claims.
Here, Wilcox does not argue that it needs expedited discovery to
protect its ability to litigate its claims; the "irreparable
harm" it identifies flows from the conduct on which it bases its
claims, not anything having to do with the conduct of this case.
Moreover, to the extent that Wilcox is seeking economic damages
resulting from defendants' unlawful use of its technology or
customer information, those damages are readily calculable and,
therefore, do not constitute irreparable harm.  See Momenta, 765
F. Supp. 2d at 89.

     The only possible harm at issue in this case that might
qualify as irreparable is damage to Wilcox's reputation and
customer goodwill.  But, like the plaintiff in Momenta, who was
denied expedited discovery in part because it "provided no
evidence that entry of a competitor into the market will cause
irreparable loss of market share and revenue," 765 F. Supp. 2d
at 89, Wilcox has provided no evidence concerning the size and

13

nature of its industry and the effects that might result from defendants' allegedly unlawful conduct. Given the reference to "demonstrated irrevocable harm" in the second <u>Momenta</u> factor rather than "alleged irrevocable harm," or "potential irrevocable harm," it would seem that evidence, rather than the mere conjecture of counsel, is necessary to support an argument on that factor. <u>See also</u> <u>McMann</u>, 460 F. Supp. 2d at 266 (noting evidence from the plaintiff's affidavit concerning lost business, trouble with financing, and irreparable reputational harm). Plainly, the court cannot take judicial notice of the size and nature of Wilcox's industry and market, or Wilcox's positions therein. <u>See</u> <u>United States v. McGregor</u>, 650 F.3d 813, 818 n.2 (1st Cir. 2011) ("Judicial notice is typically limited to 'undisputable facts like Greenwich mean time.'") (quoting <u>Mays v. Trump Ind., Inc.</u>, 255 F.3d 351, 353 (7th Cir. 2001). Wilcox has not submitted so much as an affidavit in support of its motion. Accordingly, the court has no basis for ruling that absent expedited discovery, Wilcox faces irreparable harm to its reputation and goodwill.

### 3. Likelihood of Success on the Merits

Wilcox does not address this factor in its memorandum of law.

### 4. Burden on the Defendants

Wilcox argues that its request is not unduly burdensome to defendants because it is narrowly focused and the objects and information it seeks are readily available to Hansen and ALST. Defendants contend that Wilcox's request is vague and overly broad, to the point that it is unduly burdensome.

Defendants' objection is easy to understand.  For one thing, without a pending motion for preliminary injunctive relief, Wilcox's discovery request lacks a frame of reference, which makes it difficult, at best, to determine the degree to which it is directed toward an acceptable purpose.  Cf. Phila. Newspapers, Inc. v. Gannett Satellite Info. Network, Inc., No. Civ. A. 98-CV2782, 1998 WL 404820, at *2 (E.D. Pa. July 15, 1998) (evaluating the relevance of discovery in terms of "the issues to be addressed at the preliminary injunction hearing").

Beyond that, many of Wilcox's requests are rather broadly stated.  Item b seeks the inspection of "any prototype . . . or component parts and accessories . . . ."  Pl.'s Mot. for Disc., at 2 (emphasis added).  Item c seeks the production of "any schematics, [and] user or operating manuals . . . ."  Id. (emphasis added).  Item d seeks the production of "any documents . . . ."  Id. (emphasis added).  Item f seeks the production of "any documents or information . . . ."  Id. (emphasis added). The term "any" does not typically denote narrow tailoring.  Cf.

Semitool, 208 F.R.D. at 278 (ordering the production of one set of "technical specifications, schematics, maintenance manuals and user or operating manuals" but explaining that "Defendants need not at this time produce 'any and all documents' which are essentially duplicative of those ordered herein." (emphasis added)).  Moreover, while the technical discovery Wilcox seeks is similar to (but broader than) the discovery that was allowed in Semitool, see 208 F.R.D. at 278, discovery was allowed in that case for the specific purpose of identifying the full range of potentially infringed patents, which, in turn, would streamline the litigation process.  Wilcox has articulated no such purpose here.

As Wilcox points out, much of the information it seeks appears to be accessible to defendants.[2]  But, on the other hand, the four requests for "any" documents or other information, could result in rather voluminous production.  Thus, this factor is neutral, or it tips slightly in defendants' favor.

_____

[2] While defendants do not raise this issue, the court finds item e to be a bit curious.  Wilcox seeks information Hansen acquired while working as its employee or consultant.  It seems self-evident that any information Hansen acquired, Wilcox provided (or at least made available), which might make Wilcox a more appropriate source than Hansen for the information requested in item e.

5. Degree of Prematurity

Wilcox argues that its motion is not premature because it needs the information it seeks in order to file a motion for preliminary injunctive relief that, if granted, would end the ongoing harm it is suffering as a result of defendant's conduct. While identified in Momenta and McMann, the prematurity factor was not further described or applied in either of those two opinions. However, other courts have described that factor as involving an evaluation of "how far in advance of the typical discovery process the request was made." Disability Rights Council, 234 F.R.D. at 6.

Here, as the motion for expedited discovery was filed simultaneously with the complaint, it could not have been filed any further in advance of the typical discovery process. Accordingly, the prematurity factor can hardly be said to favor Wilcox. Cf. Semitool, 208 F.R.D. at 276 (finding good cause for expedited discovery where complaint was filed on January 16, 2002, plaintiff moved for expedited discovery on March 15, and proposed to propound discovery three weeks earlier than normal); Entm't Tech., 2003 WL 22519440, at *5 (denying motion for expedited discovery, but determining that discovery request was not "made too far in advance of the start of formal discovery" when filed more than two months after the complaint). Moreover, unlike the plaintiff in Semitool, who had attempted to seek

information from the defendants for over a year, see 208 F.R.D.
at 276-77, Wilcox does not appear to have engaged in any pre-
litigation discussions or other informal attempts to acquire any
of the information it now seeks.  While Wilcox's apparent lack
of pre-litigation contact with defendants does not, strictly
speaking, go to the issue of prematurity, it does suggest that,
perhaps, productive avenues for resolving this dispute may have
been ignored.  In any event, there is nothing about the
prematurity factor that weighs in Wilcox's favor.

### 6. Other Considerations

The court concludes by addressing a factor that is not
listed in Momenta, but deserves mention as one of the
circumstances surrounding Wilcox's request.  See Momenta, 765 F.
Supp. 2d at 89 (describing reasonableness test as involving
consideration of all the surrounding circumstances).
Specifically, ALST has moved to dismiss Wilcox's claims against
it for lack of personal jurisdiction, and both defendants have
moved to dismiss for failure to state a claim upon which relief
can be granted.

In OMG Fidelity, Inc. v. Sirius Technologies, Inc., the
plaintiff moved for expedited discovery and in response, the
defendant indicated its intention to file a Rule 12(b) motion.
See 239 F.R.D. 300, 304 (N.D.N.Y. 2006).  Magistrate Judge

Peebles explained that "[t]he prospect of such a motion is obviously a factor which should be considered by the court in deciding whether to permit discovery in this case to go forward at this procedural juncture." Id. Here, defendants have not just indicated their intention to file motions to dismiss; they have done so.

As the court noted in OMG, "[t]he mere filing of a dismissal motion, without more, does not guaranty entitlement to . . . a stay" of discovery under the "good cause" standard of Rule 26(c). OMG, 239 F.R.D. at 304 (citing Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd., 206 F.R.D. 367, 368 (S.D.N.Y. 2002); Moran v. Flaherty, No. 92 Civ. 3200, 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992)). Here, of course, defendants are not seeking to stay discovery that has begun in the normal course; they are seeking to persuade the court not to allow discovery to commence outside the normal course.

While not dispositive of the issue, the pendency of defendants' motions to dismiss weighs against ordering expedited discovery. Many of Wilcox's requests are directed toward ALST, over which the court may lack personal jurisdiction. It is difficult to see how justice would be served by putting ALST to the trouble of producing the information Wilcox seeks before Judge Barbadoro determines whether this court even has personal jurisdiction over ALST in the first instance. To be sure,

Wilcox also seeks discovery from Hansen, and Hansen does not
challenge the court's jurisdiction over him.  But, by the same
token, if the court were to grant Wilcox's motion, and Judge
Barbadoro were to grant Hansen's motion to dismiss, then Hansen
will have been put to some amount of unnecessary effort.  If
discovery were properly underway, and Hansen had moved to
dismiss and for a stay of discovery, then, perhaps, the court
would be obligated to evaluate the strength of his arguments for
dismissal.  See OMG, 239 F.R.D. at 304 (citing Chesney v. Valley
Stream Union Free Sch. Dist. No. 24, 236 F.R.D. 113, 115
(E.D.N.Y. 2006); Spencer Trask, 206 F.R.D. at 368).  But here,
the mere pendency of Hansen's motion to dismiss weighs in favor
of denying Wilcox's request for expedited discovery.

### 7. Summary

On balance, the Momenta factors, along with defendants'
pending motions to dismiss, counsel in favor of denying Wilcox's
motion for expedited discovery.  Wilcox filed its motion
simultaneously with its complaint, and it did so in
contemplation of filing a motion for preliminary injunctive
relief, rather than to collect evidence necessary for a
scheduled hearing on such a motion.  In addition, Wilcox
identifies no irreparable harm it might suffer if it is not
allowed to get a head start on discovery.  Accordingly, under

the circumstances of this case, Wilcox is not entitled to expedited discovery.

## Conclusion

For the reasons described above, Wilcox's motion for limited expedited discovery, document no. 3, is denied.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

January 17, 2012

cc:  Nicholas F. Casolaro, Esq.
     Todd A. Sullivan, Esq.
     Jeremy T. Walker, Esq.