UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Wilcox Industries Corp.**

   **v.**                                         Case No. 11-cv-551-PB
                                                           Opinion No. 2012 DNH 072

**Mark Hansen, Advanced Life**
**Support Technologies, Inc.**

**MEMORANDUM AND ORDER**

Wilcox Industries Corp. ("Wilcox"), a New Hampshire corporation, is suing the Virginia-based Advanced Life Support Technologies, Inc. ("ALST") and its president and founder, Mark Hansen. Wilcox claims that ALST is liable for misappropriation of trade secrets, common-law unfair competition, violation of the New Hampshire Consumer Protection Act, and intentional interference with contractual relations. Wilcox asserts that its claims against ALST arise out of ALST's contacts with New Hampshire while the parties were involved in a two-year consulting relationship. ALST moves to dismiss the complaint for lack of personal jurisdiction.[1] For the reasons provided below, I deny the motion.

---

[1] Hansen and ALST also move to dismiss the complaint for failure to state a claim upon which relief may be granted. Doc. No. 11. Alternatively, they move for entry of an order pursuant to Rule

1

## I.   BACKGROUND

Hansen formed ALST in 2006, while he was employed at Wilcox as Vice President of Virginia Beach Operations.  When his employment at Wilcox ended in 2007, Hansen and Wilcox initiated discussions about entering into a consulting agreement, whereby ALST would serve as a consultant for Wilcox in the design and manufacture of its respirator systems and provide training and support for those systems to Wilcox's customers.  Teetzel Decl. ¶¶ 5-6, Doc. No. 19-8.  During those discussions, Hansen acted on behalf of ALST.  Id.  He sent emails to Wilcox's employees in New Hampshire from his personal email address expressing his interest in providing consulting services to Wilcox.  See Doc. No. 19-9; Doc. No. 19-10.  He also communicated with them via telephone.  Teetzel Decl. ¶ 5, Doc. No. 19-8.

Wilcox proposed that the parties sign a formal consulting agreement.  Id. ¶ 7.  The proposed agreement named ALST as the "consultant" and Hansen as "the sole representative" of ALST who would provide the services outlined in the agreement.  See Doc. No. 19-11 at 3.  ALST, however, refused to sign that agreement and indicated that it would not sign any type of formal

---

12(e), requiring Wilcox to provide a more definite statement as to Counts I and V of the complaint.  Doc. No. 12.  I will rule on those motions in a separate order.

agreement.  Teetzel Decl. ¶ 8, Doc. No. 19-8.

Hansen subsequently negotiated an informal consulting arrangement with Wilcox.  As was the case during the negotiations that predated the proposed formal agreement, Hansen communicated with Wilcox from his personal, as opposed to the company's, email address.  See Doc. No. 19-12.  Once the agreement was reached, he stated, "I am ready to go to work!"  Id.  ALST later submitted invoices for Hansen's services to Wilcox and Wilcox made payments to ALST.  See Doc. No. 19-4; Doc. No. 19-5.

In the course of the consulting relationship, Hansen traveled to Wilcox's New Hampshire facility to participate in meetings about the development of Wilcox's next-generation PATRIOT life support device.  Teetzel Decl. ¶ 10, Doc. No. 19-8.  During that time, Hansen also traveled with Wilcox's employees to various customer locations throughout the world to market Wilcox's current PATRIOT product and to train customers on how to use the device.  West Aff. ¶ 8, Doc. No. 19-2.  Through those activities, Hansen was allegedly entrusted with trade secrets that he and ALST subsequently misappropriated and used to compete unfairly against Wilcox.  While purporting to train Wilcox's customers and market the life support systems on Wilcox's behalf, Hansen also allegedly marketed ALST to Wilcox's

3

customers and promoted products and services that competed with Wilcox.

Shortly after the consulting relationship ended in 2009, ALST began marketing and selling its own hybrid life support system. Wilcox contends that ALST's device incorporates confidential design and mechanical aspects of Wilcox's next-generation PATRIOT product that were discussed at meetings that Hansen attended in New Hampshire and in communications directed to and from New Hampshire. See Teetzel Decl. ¶¶ 10-11, Doc. No. 19-8. Wilcox also alleges that ALST used Wilcox's confidential customer information, which Hansen learned of in the course of the consulting relationship, to solicit business from Wilcox's existing customers and make harmful statements about Wilcox.

## II.   STANDARDS OF REVIEW

### A.   Motion to Dismiss

In objecting to a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of persuading the court that personal jurisdiction exists. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009). Because I have not held a hearing on the motion, Wilcox must make a prima facie showing that the court has personal jurisdiction over ALST. Cossaboon v. Me. Med. Ctr., 600 F.3d

25, 31 (1st Cir. 2010). A prima facie showing requires the plaintiff to "proffer[] evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." Lechoslaw v. Bank of Am., N.A., 618 F.3d 49, 54 (1st Cir. 2010) (internal quotation marks omitted). I will consider Wilcox's facts to the extent they are supported by the evidence and consider the facts offered by ALST "to the extent that they are uncontradicted." Cossaboon, 600 F.3d at 31 (internal quotation marks omitted). Despite the liberality of the prima facie standard, I will not "credit conclusory allegations or draw farfetched inferences." Negron-Torres v. Verizon Commc'ns, 478 F.3d 19, 23 (1st Cir. 2007).

**B.   Personal Jurisdiction**

Personal jurisdiction in a diversity action over a non-resident defendant depends on satisfying both the requirements of the forum state's long-arm statute and the due process requirements of the Fourteenth Amendment. See Cossaboon, 600 F.3d at 29 n.1; N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 24 (1st Cir. 2005). New Hampshire's long-arm statutes, RSA § 293-A:15.10 and RSA § 510:4, extend personal jurisdiction to the

extent allowed by due process.[2]  Hemenway v. Hemenway, 159 N.H. 680, 685 (2010); see also N. Laminate Sales, 403 F.3d at 24; Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd., 298 F.3d 1, 7 (1st Cir. 2002).

   A court may exercise either general or specific personal jurisdiction, depending on the nature of the defendant's contacts with the forum state.  Carreras v. PMG Collins, LLC, 660 F.3d 549, 552 (1st Cir. 2011).  In this case, Wilcox asserts that specific personal jurisdiction applies.[3]  Specific personal jurisdiction has three parts.  Adelson v. Hananel, 652 F.3d 75, 80 (1st Cir. 2011).  The first part asks "whether the asserted causes of action arise from or relate to the defendant's contacts with the forum;" the second asks "whether the defendant purposefully availed itself of the protections of the forum's laws by means of those contacts, such that the defendant could reasonably foresee being haled into the forum's courts;" and the third asks "whether an exercise of jurisdiction is consistent

---

[2] RSA is an abbreviation for New Hampshire Revised Statutes Annotated.

[3]  ALST argues that Wilcox limited itself to a claim of general jurisdiction because it asserted in its complaint that Hansen was ALST's alter ego.  This argument is obviously incorrect.  Alter ego liability can serve as a basis for either general or specific jurisdiction in an appropriate case.  Here, it is quite clear that Wilcox is basing its personal jurisdiction argument on a claim that the court has specific personal jurisdiction over ALST.

with principles of justice and fair play" in light of the so-called gestalt factors.  Carreras, 660 F.3d at 554 (internal quotation marks and citations omitted).  All three requirements must be satisfied to support a finding of specific personal jurisdiction.  Negron-Torres, 478 F.3d at 25.

## II.  ANALYSIS

ALST contends that Wilcox has not made a prima facie showing that this court has personal jurisdiction over ALST.  Specifically, ALST argues that the evidence Wilcox submitted in support of personal jurisdiction establishes, at most, that Hansen entered into the consulting agreement with Wilcox not on behalf of ALST but in his personal capacity.  Accordingly, ALST argues, Hansen's conduct in New Hampshire that gave rise to this suit is not attributable to ALST.  Because the record evidence, viewed in the light most favorable to Wilcox, establishes a prima facie case for personal jurisdiction, I deny ALST's motion.

### A.   ALST's Contacts with the Forum

To establish that ALST had sufficient minimum contacts with New Hampshire such that the exercise of personal jurisdiction would be proper, Wilcox may rely on "actions imputed to [ALST] through its agents — as indeed it must, because any action legally attributed to a corporation is that of one agent or

another."  Jet Wine & Spirits, 298 F.3d at 7; see United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1090 (1st Cir. 1992) (due to the nature of the corporate form, "the contacts of a corporation's agent can subject the corporation to personal jurisdiction").  The disputed issue is whether Hansen acted on behalf of ALST in providing consulting services to Wilcox such that his resulting contacts with New Hampshire can be imputed to ALST.

Wilcox contends that it entered into a consulting arrangement with ALST through Hansen as its agent.  Wilcox further asserts that Hansen, as the sole representative of ALST who provided the agreed-upon services, attended meetings in New Hampshire where he was entrusted with Wilcox's trade secrets that he and ALST subsequently misappropriated.  In addition, Wilcox asserts that ALST, through Hansen, directed email and telephone communications to New Hampshire-based employees of Wilcox discussing those trade secrets.

ALST disputes that Hansen acted on behalf of the company when he entered into the consulting arrangement and provided services to Wilcox.  ALST argues that the evidence Wilcox submitted in support of personal jurisdiction establishes, at most, that the two companies contemplated entering into a consulting agreement, but that ALST refused to sign it.

8

According to ALST, the evidence shows that Hansen then entered into a consulting arrangement with Wilcox not on behalf of ALST but in his personal capacity.  Accordingly, his conduct in New Hampshire that gave rise to this suit is not attributable to ALST.

Evidence in the record, viewed in the light most favorable to Wilcox, supports Wilcox's assertions that Hansen acted on behalf of ALST.  ALST does not dispute that Hansen acted as its agent in attempting to negotiate a formal agreement between the two companies.  That agreement named ALST as the consultant and Hansen as the sole representative of ALST who would provide consulting services to Wilcox.  See Doc. No. 19-11 at 3.  When ALST refused to sign the agreement, Hansen continued to negotiate with Wilcox on an informal consulting arrangement. Nothing in the record suggests that Hansen began acting in a personal capacity rather than as ALST's agent when he negotiated the informal agreement with Wilcox.

In arguing otherwise, ALST makes much of the fact that Hansen used his personal, as opposed to the company's, email address in the subsequent communications with Wilcox, and stated, "I am ready to go to work," as evidence that he was acting in his personal capacity.  See Doc. No. 19-12.  ALST, however, fails to mention that Hansen used the same email

9

address during the initial negotiations between Wilcox and ALST that predated the proposed formal agreement, and that in those emails, he similarly referred to himself as the person who would provide the consulting services to Wilcox.  See Doc. No. 19-9.

In any event, the fact that ALST submitted invoices to Wilcox for Hansen's consulting services and that Wilcox made payments directly to ALST is sufficient to show that Hansen acted as ALST's agent in providing those services.  By knowingly accepting the benefits of the arrangement, ALST ratified Hansen's actions, such that they are treated as having been authorized from the outset.  See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 55 (1st Cir. 2002) ("Whether or not an agent is initially authorized to act on behalf of a principal, the agent's actions may be attributed to the principal, for purposes of personal jurisdiction, if the principal later ratifies the agent's conduct."); Inn Foods, Inc. v. Equitable Co-op. Bank, 45 F.3d 594, 598 n.7 (1st Cir. 1995) (noting that "benefits received are certainly strong evidence that the principal acquiesced in the agent's transaction").  Therefore, it is consistent with due process to attribute to ALST Hansen's contacts with New Hampshire in the course of the consulting arrangement.

B.      **Personal Jurisdiction over Misappropriation Claim**

With respect to its misappropriation claim, Wilcox has made a prima facie showing that this court has personal jurisdiction over ALST. Wilcox has satisfied its burden to demonstrate that the claim is related to ALST's contacts in New Hampshire, that ALST purposefully availed itself of the benefits of conducting business in the forum, and that the exercise of jurisdiction is reasonable. I discuss each element in turn.

   1.    **Relatedness**

The relatedness inquiry asks whether "the cause of action [underlying the litigation] either arises directly out of, or is related to, the defendant's forum-based contacts." Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005). Wilcox's asserted causes of action against ALST sound in tort. Therefore, the court "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999). In undertaking this inquiry, courts ordinarily ask both whether "the injury would not have occurred 'but for' the defendant's forum-state activity" (cause in fact) and whether "the defendant's in-state conduct gave birth to the cause of action" (proximate cause). Mass. Sch. of Law v. Am. Bar Ass'n, 142 F.3d 26, 35 (1st Cir. 1998). "Although 'strict

11

adherence to a proximate cause standard in all circumstances is unnecessarily restrictive,' in most cases, 'the proximate cause standard better comports with the relatedness inquiry because it so easily correlates to foreseeability, a significant component of the jurisdictional inquiry.'"  Harlow, 432 F.3d at 61 (quoting Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 715 (1st Cir. 1996)).

The relatedness inquiry begins "by identifying the alleged contacts, since there can be no requisite nexus between the contacts and the cause of action if no contacts exist."  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 621 (1st Cir. 2001).  ALST's relevant contacts with New Hampshire are as follows: (1) travel to Wilcox's New Hampshire facility to participate in meetings about the development of Wilcox's next-generation PATRIOT life support device; and (2) email and telephone communications between Wilcox and ALST discussing design and improvements to the device.

Wilcox's claim that ALST misappropriated its trade secrets arises directly out of those contacts with New Hampshire.  It was during those meetings and communications that Wilcox entrusted ALST with its confidential trade secret information.  Hence, the relationship between Wilcox's misappropriation claim and ALST's contacts with the forum is neither attenuated nor

12

indirect. See United Elec. Workers, 960 F.2d at 1089. Rather, ALST's acquisition of Wilcox's trade secrets through its actions in New Hampshire forms an "important, or at least material, element of proof in the plaintiff's case." Id. (internal quotations and alterations omitted). Although actual misappropriation of trade secrets occurred elsewhere, ALST's conduct in New Hampshire "gave birth to the cause of action." See Mass. Sch. of Law, 142 F.3d at 35. Hence, the relatedness requirement is easily satisfied with respect to Wilcox's misappropriation claim.

### 2. **Purposeful Availment**

By engaging in a consulting arrangement with a New Hampshire corporation, ALST purposefully availed itself of the privilege of conducting business activities in this forum. "The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995) (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). Hence, the cornerstones of purposeful availment are voluntariness and foreseeability. Id.

Here, ALST's communications directed to New Hampshire and its travel to the state to attend meetings at Wilcox's facility

13

were not random, isolated, or fortuitous.  Those contacts were knowing and purposeful.  At the time it entered into the consulting arrangement, ALST knew that Wilcox was a New Hampshire corporation.  Thus, ALST could have foreseen that, should a claim arise out of Hansen's actions on behalf of the company in New Hampshire, it would likely be haled into court in the forum.

3. **The Gestalt Factors**

Lastly, I consider whether it is fair and reasonable to subject ALST to the authority of a court in New Hampshire.  The relevant factors for consideration include "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 46 (1st Cir. 1993).

First, ALST's burden of litigating this case in New Hampshire falls short of reaching constitutional significance.  The sole representative of ALST with knowledge and involvement in the underlying facts of this case is Hansen, ALST's co-

14

defendant who has submitted to the jurisdiction of this court. Moreover, ALST has not demonstrated any unique burden of litigating in the state. See Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994) ("[I]nsofar as staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly, we think this factor is only meaningful where a party can demonstrate some kind of special or unusual burden.").

Second, New Hampshire has a demonstrable interest in adjudicating the dispute. As the First Circuit has observed, "[t]he purpose of [this] inquiry is not to *compare* the forum's interest to that of some other jurisdiction, but to determine the extent to which the forum *has* an interest." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 151 (1st Cir. 1995) (emphasis in original). New Hampshire has a strong interest in the prosecution of a case where an out-of-state defendant came into the state, obtained trade secrets from a New Hampshire business, and then injured that business by misappropriating its trade secrets. Hence, this factor also cuts in favor of jurisdiction.

Third, Wilcox has a considerable interest in obtaining convenient and effective relief in its home state. I need not dwell on this factor because "plaintiff's choice of forum must

15

be accorded a degree of deference with respect to the issue of its own convenience." Sawtelle, 70 F.3d at 1395.

Fourth, the judicial system's interest in obtaining the most effective resolution of the controversy does not appear to cut in either direction here, as is frequently the case. See Jet Wine & Spirits, 298 F.3d at 12; Sawtelle, 70 F.3d at 1395; Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 211 (1st Cir. 1994).

The fifth and last of the gestalt factors, which implicates the common interests of all sovereigns in promoting substantive social policies, weighs in favor of jurisdiction. "Here, the most prominent policy implicated is the ability of a state to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors." Sawtelle, 70 F.3d at 1395. When a company does business in New Hampshire or directs its actions at New Hampshire from outside the state, "it might frustrate the relevant state substantive social policies (those embodied in its contract and tort law) to insulate [that company] from the legal consequences of its actions." Jet Wine & Spirits, 298 F.3d at 12. Hence, this factor weighs in favor of the exercise of jurisdiction as well.

16

In sum, relatedness, purposeful availment, and the gestalt factors all support the exercise of personal jurisdiction over ALST with respect to Wilcox's misappropriation claim.

## C. **Pendent Personal Jurisdiction over Remaining Claims**

In addition to the trade secrets misappropriation claim, Wilcox asserts that ALST is liable for common-law unfair competition, violation of the New Hampshire Consumer Protection Act, and intentional interference with contractual relations. I need not decide whether Wilcox has established jurisdiction over ALST with respect to those claims because I will exercise pendent personal jurisdiction over them.

The doctrine of pendent personal jurisdiction provides that "a district court has discretion to exercise personal jurisdiction over a claim that it ordinarily lacks personal jurisdiction over only when that claim arises out of the same common nucleus of operative fact as does a claim that is within the in personam jurisdiction power of the court." 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.7 (3d ed. 2010); see Aftokinito Properties, Inc. v. Millbrook Ventures, LLC, 09-CV-415-JD, 2010 WL 3168318, at *6 (D.N.H. May 25, 2010); GT Solar Inc. v. Goi, CIV. 08-CV-249-JL, 2009 WL 3417587, at *12 (D.N.H. Oct. 16, 2009); D'Jamoos v. Atlas Aircraft Ctr., Inc., 669 F. Supp. 2d 167, 174 (D.N.H.

2009); see also Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1181 (9th Cir. 2004) ("When a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts.  We believe that judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties is best served by adopting this doctrine."); United States v. Botefuhr, 309 F.3d 1263, 1273 (10th Cir. 2002) ("[T]he majority of federal district courts and every circuit court of appeals to address the question have upheld the application of pendent personal jurisdiction . . . .").

   Wilcox's remaining claims against ALST arise from the same nucleus of facts as the misappropriation claim, namely, ALST's actions in the course of the consulting relationship with Wilcox.  Specifically, the common nucleus is the allegation that ALST, through its contacts with New Hampshire, had access to, used improper means to obtain, and subsequently misappropriated the proprietary information regarding Wilcox's next-generation PATRIOT device and its customers.  Therefore, I will exercise pendent personal jurisdiction over Wilcox's remaining claims.

## **IV.    CONCLUSION**

For the aforementioned reasons, I deny ALST's motion to dismiss for lack of personal jurisdiction (Doc. No. 10).

SO ORDERED.

>                            /s/Paul Barbadoro
>                            Paul Barbadoro
>                            United States District Judge

April 13, 2012

cc:   Jeremy T. Walker, Esq.
      Nicholas F. Casolero, Esq.
      Stephen B. Mosier, Esq.
      Todd A. Sullivan, Esq.